UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FAITH PRODUCTIONS, LLC                      CIVIL ACTION

VERSUS                                      NO. 07-4726

ST. PAUL TRAVELERS INSURANCE CO.            SECTION: "B"(5)

## ORDER AND REASONS

Before the Court is St. Paul Travelers Insurance Company's ("Defendant") Motion for Summary Judgment and Faith Productions, LLC's ("Plaintiff") opposition (Record Document Nos. 60, 64 and 66). For the following reasons, defendant's motion is **DENIED**.

### Facts of Case:

The claim arose from alleged damages Plaintiff sustained to its business and business property as a result of Hurricane Katrina on or around August 29, 2005. (Rec. Doc. 1). Plaintiff was a video production company with several locations in the areas affected by the hurricane. Plaintiff owned business property which was insured by Defendant. (Rec. Doc. 1). Plaintiff alleges that the insurance contract with Defendant provided coverage for hurricane damages. (*Id.*).

Both parties agree that after the hurricane, Plaintiff submitted a claim to which Defendant responded by sending adjusters and/or other representatives to evaluate Plaintiff's losses. (Rec.

Doc. 1; Rec. Doc. 3). Plaintiff avers that Defendant has not offered to pay Plaintiff for its business property and business income damages. (Rec. Doc. 1). According to Plaintiff, Defendant advised Plaintiff that extensive documentation of the claims was required. (*Id*.). Plaintiff claims to have fully cooperated with Defendant by providing access to the business property and business records as well as the claim documentation. (*Id*. at 3).

On August 28, 2007, Plaintiff filed the instant suit against Defendant, his insurer, in the U.S. District Court for the Eastern District of Louisiana (Rec. Doc. 1), alleging breach of contract, negligent misrepresentation, unjust enrichment and bad faith. On June 1, 2009, Defendant filed the instant Motion for Summary Judgment. Plaintiff submitted its opposition to the motion on June 18, 2009. (Rec. Doc. 61).

**Contentions of Movant:**

Defendant argues that based on the information provided by Plaintiff, the insured property may fall under three categories: (1) owned property; (2) non-owned property (leased); and (3) production related computer hardware and software. (*Id*.). Because there were separate limits for each category, Defendant made requests to Plaintiff and Plaintiff's adjuster to classify each piece of lost/damaged property accordingly. Defendant contends that such requests were made to no avail, which resulted in Defendant's inability to properly adjust the claim and accurately

recompense Plaintiff for damages. Defendant claims that it advanced $50,000 to Plaintiff in good faith while Plaintiff obtained and produced the requested documentation. It argues that Plaintiff has already been reimbursed for all losses for which proof of loss and invoices have been produced, and Plaintiff's claim should be dismissed in its entirety. Alternatively, Defendant contends that the portion of Plaintiff's claim which proof of ownership has not yet been produced should be dismissed. In either case, Defendant contends that Plaintiff's claim for bad faith penalties and attorney's fees should be dismissed because Defendant did not act arbitrarily or capriciously in handling Plaintiff's claim.

**Contentions of Respondent:**

Plaintiff claims that Plaintiff hired a public adjuster who compiled a preliminary, but incomplete, list of the destroyed equipment and submitted it to Defendant. Plaintiff claims this list was Plaintiff's initial production of proof of loss. Plaintiff contends that when Defendant sent the $50,000 advance, it represented only a partial payment on the total of the initial proof of loss. Plaintiff avers that Plaintiff submitted at least two supplemental proofs of loss including bank documents, itemized lists of owned equipment versus leased equipment, and lease agreements. Plaintiff proclaims that Plaintiff's damages have reached amounts of up to $1.6 Million. Plaintiff alleges that

Defendant has not responded to Plaintiff's subsequent proofs of loss.

## *Summary Judgment Standard*

Rule 56(b) of the Federal Rules of Civil Procedure provides that a party against whom a claim is asserted may, at any time, move with or without supporting affidavits for summary judgment in the party's favor. Fed. R. Civ. P. 56(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law. *Disaster Relief Services of North Carolina, LLC v. Employers Mut. Cas. Ins. Co.*, No. 07-1925, 2009 U.S. Dist. WL 935963, at *2 (W.D. La. April 6, 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party. *Id.* (citing *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)).

Where the non-moving party will bear the burden of proof at

trial on the dispositive issue, in order to survive summary judgment, that party must go beyond the pleadings and designate specific facts as to make a showing sufficient to establish the existence of an essential element to the party's case. *Celotex*, 477 U.S. at 322. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Id.* at 587. The mere existence of a scintilla of evidence on the non-moving party's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party must present evidence upon which a reasonable jury could reasonably find for the non-movant. *Id.* If the entire record could not result in a rational jury finding in favor of the nonmoving party, there is no genuine issue for trial and summary judgment is warranted. *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir. 1999) (citing *Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 174 (5th Cir. 1994)).

### *Insurance Claims and Penalties*

Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. *Dickerson v. Lexington Ins. Co.*,

556 F.3d 290 (5th Cir. 2009). Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage. *Id*. Insurers owe certain duties to their insureds in adjusting and paying claims. *Tardo v. State Farm Fire and Cas. Co.*, No. 08-1165, 2009 WL 1804762 (E.D. La. June 19, 2009). Section 22:658 provides a penalty for an insurer's failure to pay a claim within thirty days after receipt of satisfactory proof of loss if the failure was arbitrary, capricious, or without probable cause. *Id.;* La. R.S. §22:658. Section 22:1220(B)(5) provides that an insurer owes a duty of good faith and fair dealing to an insured and it similarly provides a penalty for an insurer's failure to pay a claim within sixty days after receipt of satisfactory proof of loss if the failure was arbitrary, capricious, or without probable cause. *Id*. (citing La. R.S. §22:1220). These statutes prohibit "virtually identical" conduct, the primary difference being the time periods allowed for payment. *Id*. (citing *Korbel v. Lexington Ins. Co.*, No. 07-31111, 2009 WL 190691, at *803 (5th Cir. Jan. 28, 2009).

§ 22:658 provides in pertinent part:

> A.(1) All insurers issuing any type of contract … shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured …
>
> (3) … In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this

> Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
>
> B.(1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim … or failure to make such payment within thirty days after written agreement or settlement … when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty …

§ 22:1220 provides in pertinent part:

> A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
>> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
>>
>> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

In order to recover penalties pursuant to these statutes, the insured must establish: (i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the

insurer's failure to pay was arbitrary and capricious. *Korbel*, supra, (citing *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)(quoting *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 233 (La. App. 2005). These statutes are penal in nature and, consequently, must be strictly construed. *Id*. (citing *Hart v. Allstate,* 437 So.2d 823, 827 (La. 1983)). Accordingly, the insured must "clearly show that the insurer was arbitrary, capricious, and without probable cause in refusing to pay." *Id*. Further, the statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Id*. (citing *Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So.2d 1012, 1021 (La. 2003)).

As the Louisiana Supreme Court recently stated, "[i]t is well settled that a satisfactory proof of loss is only that which is sufficient to fully apprise the insurer of the insured's claims." *Korbel,* supra, at *803 (citing *Louisiana Bag Co. v. Audubon Indem. Co.,* 999 So.2d. 1104, 1119 (La. 2008). Satisfactory proof of loss of must include the extent of damages, and the plaintiff bears the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Id*. (citing *Reed,* at 1019). An insurer does not act arbitrarily and capriciously, however, when it withholds payment based on a genuine, good faith dispute about the amount of a loss or the applicability of coverage. *Id*.

-8-

A. Dismissal of Plaintiff's Claims

Faith bears the initial burden of proving that the claims for loss it alleges fall within the ambit of coverage as provided by the insurance policy. Although the policy itself does not specifically state what evidence is sufficient to show actual proof of loss, the policy, as noted earlier, divides losses into three broad categories. There are separate limits for each category. Thus, St. Paul reasonably requested that Faith itemize and categorize their damages accordingly. St. Paul further requested documentation that the equipment belonged to its respective category. It is likely that St. Paul's logic for requesting such extensive documentation was to protect itself from being exposed to fraudulent and/or inaccurate claims. Before Faith produced such documentation, St. Paul made a good faith advance in the amount of $50,000 to Faith.

Faith produced numerous documents in an effort to satisfy St. Paul's proof of loss labeling requirements. The initial inventory was produced by Faith's public adjuster in November, 2005. Faith produced its first supplemental inventory to St. Paul on August 17, 2007. This inventory contained more listings, but they were not itemized according to St. Paul's requests. It was then that Faith's claim increased to $1.6 Million. According to Faith, this supplement consisted of a spreadsheet that indicated whether certain property was owned or leased. In his deposition, Faith's

principal John Gibson testified that certain equipment was owned and certain equipment was leased by Faith.  On October 15, 2008, Faith produced supplementary responses to discovery as ordered by the Magistrate Judge.  Among the information produced was that of leasing arrangements prior to the hurricane.  Faith then produced additional documents such as bank account statements and an income tax return.  Faith subsequently provided St. Paul with documents evidencing proof of ownership and lease of various property and equipment.  Pursuant to a hearing with this judge, Faith produced additional bank statements and copies of checks.  Thereafter, John Gibson produced an affidavit attesting that all of Faith's leasing companies had been contacted, and that Faith had produced all documentation in its possession.

Faith has submitted documents and potential evidentiary proof of loss to St. Paul on more than five occasions.  Although each item in this massive insurance claim has not been categorized or grouped as it should be, to dismiss the claim in its entirety would not lead to an equitable result.  Faith has and still is producing evidence of losses incurred as a result of Hurricane Katrina.  Discovery for this case is open until September, 2009.  The losses which Faith has already shown appears to exceed $50,000.  However, one cannot say with a degree of substantial certainty that Faith is not and will not be entitled to any more relief in the near future even though the items have not been classified.  Summary Judgment

is not appropriate at this time.

B. Bad Faith Penalties

St. Paul also seeks to dismiss Faith's claims for damages, penalties, and attorney's fees against St. Paul. The first thing that Faith must prove in order to be entitled to such relief is that Faith provided St. Paul with satisfactory proof of loss. Contrary to St. Paul's argument discussed above, Faith claims that it produced the original proof of loss, and at least two supplemental proofs of loss as to owned and leased property. (Rec. Doc. 61). Faith asserts that the $50,000 advance given by St. Paul was merely a small portion of the initial claimed amount. (*Id*.). Faith claims that St. Paul has yet to respond to the two supplemental proofs of loss provided to St. Paul by Faith and therefore, Faith is entitled to damages and penalties. (*Id*.). However, there is a genuine issue as to whether and when St. Paul ever received sufficient evidence.

Whether St. Paul failed to pay the claim within the statutory time period depends on when St. Paul received actual proof of loss. This material fact is in dispute. Although the extent of Faith's damages may be gathered from the masses of documents Faith has produced, Faith may have difficulty proving that St. Paul acted arbitrarily in its actions. St. Paul withheld payment because certain coverage limits in the policy only apply to certain types of property. Thus, it was imperative that Faith list its damaged

items accordingly. It follows that because Faith did not categorize the items as requested, Faith could be considered a contributor to St. Paul's withholding the funds. On the other hand, St. Paul admitted that it received sufficient proof of loss over the duration of the claim and throughout litigation. If this is true, then the prescriptive period within which St. Paul was required to settle Faith's claim commenced when St. Paul received adequate proof of loss. In that case, if there were instances where St. Paul did not compensate Faith, St. Paul would be subject to penalties. Additionally, if Faith produces sufficient proof of loss in the future, the prescriptive period will commence then. Therefore, there is a genuine issue as to when the prescriptive period began and whether St. Paul's withholding payment was based on a good faith dispute about the amount of a loss or the applicability of coverage. The evidence leaves open the possibility that a rational trier of fact may return a judgment in favor of Faith.

New Orleans, Louisiana, this 27th day of August, 2009.

_____
UNITED STATES DISTRICT JUDGE